UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AARON MANN, AN INDIVIDUAL, AND AUDIENCEARC, INC., A CALIFORNIA CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**PUNCHKICK INTERACTIVE, INC., AND DOES 1 THROUGH 20, INCLUSIVE**<br><br>Defendant. | Case No. 4:15-cv-05981-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER**<br><br>Re: Dkt. No. 17 |

On February 17, 2016, Defendant Punchkick Interactive, Inc. ("PKI") filed a motion to transfer venue. (Dkt. No. 17.) PKI requests transfer of this action to the Southern District of Ohio pursuant to a forum selection clause. Plaintiffs Aaron Mann and AudienceArc, Inc. (collectively "AudienceArc") opposed the motion. (Dkt. No. 19.)

Having carefully considered the briefing and evidence submitted and the record in this case, and for the reasons stated herein, the Court **GRANTS** PKI's motion to transfer pursuant to the forum selection clause.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On June 28, 2013, PKI and AudienceArc[1] entered into a written agreement and statement of work under which PKI would provide AudienceArc with "strategic mobile consult[ing]" services for the development of an application ("the App") for Visa/Ingo. (Declaration of Ryan Unger ("First Unger Decl."), Dkt. No. 17-2, Exh. A ["June SOW"].) On July 9, 2013, PKI delivered its final work product under the June SOW to AudienceArc. (Declaration of Aaron Mann ("Mann Decl."), Dkt. No. 19-1, ¶ 6.)

---

[1] Defendant AudienceArc was formerly known as SocialArc, Inc.. (Dkt. No. 1, Notice of Removal, at Exh. 1 [First Amended Complaint], ¶ 1.) The initial agreement was between PKI and SocialArc, Inc. However, for ease of reference, the Court will refer to both entities as AudienceArc.

According to PKI's Chief Technology Officer, Ryan Unger, in August 2013 the parties discussed an additional project for Visa as an extension of the services under the June SOW. (Reply Declaration of Ryan Unger ("Second Unger Decl."), Dkt. No. 21-2, ¶ 2.) At that time, Mann requested PKI to send him an estimated invoicing schedule for the additional development work. (Reply Declaration of Michelle Woods ("Second Woods Decl."), Dkt. No. 21-3, Exh. A.) In response to Mann's request, PKI sent Mann an estimated invoicing schedule. (*Id.*) In his email response, Mann acknowledged receipt of the schedule and approved it, stating "[g]ot it and in the system to be paid." (*Id.*)

Thereafter, PKI sent invoices to AudienceArc for the additional development work that it performed and AudienceArc made payments towards these invoices. (Mann Decl., ¶ 9.) However, by January 2014, AudienceArc had failed to pay outstanding invoices for the work performed by PKI, totaling $110,648. (Declaration of Michelle Woods ("First Woods Decl."), Dkt. No. 17-3, ¶ 3.) On February 17, 2014, Mann made a $10,000 payment towards the outstanding invoices, and stated that this was the "first in a series" of payments that would be made to PKI. (*Id.*, Exh. B.) At the time, Mann apologized for the unpaid invoices and cited financial problems as the reason AudienceArc was unable to pay the invoices and even discussed the possibility of a merger. (First Unger Decl., Exh. B and C.) In March 2014, Unger contacted Mann about the outstanding invoices, which then totaled over $200,000. (First Woods Decl., ¶ 5, Exh. C.) Mann's response was apologetic and explained that the company was in a "cash crunch" and he was seeking outside funding to pay its debts. (*Id.*, Exh. C.)

In March 2015, PKI filed suit against Mann and AudienceArc in Illinois State Court alleging claims for breach of contract, fraud on creditors and violations of the Uniform Fraudulent Transfers Acts based upon AudienceArc's failure to pay for the additional work alleged to have been undertaken pursuant to the June SOW. (Second Unger Decl., Exh. B [Illinois Complaint].) AudienceArc moved to dismiss the Illinois Complaint for improper venue pursuant to the forum selection clause contained in the June SOW. (Declaration of Henry Burgoyne, Dkt. No. 32-1 and 32-4, Exh. C [Illinois Motion to Dismiss].) As Mann and AudienceArc there argued, "to the extent that the [June SOW] agreement attached to the complaint is in any way relevant…the

1  parties agreed that 'any and all claims and demand relating or pertaining in any way' to that
2  agreement 'shall' be resolve[d in] Ohio." (*Id.*, Exh. 3 at 1, quoting June SOW at 6.) On
3  November 4, 2015, the Illinois court granted AudienceArc's motion to dismiss for improper venue
4  finding that the forum selection clause in the June SOW applied and required dismissal in favor of
5  venue in Ohio. (First Unger Decl., Exh. D [Illinois Order].)

6  On November 4, 2015, the same day as the Illinois state court order dismissing the Illinois
7  Complaint, AudienceArc the instant declaratory relief action was commenced in San Francisco
8  Superior Court. (Notice of Removal, Dkt. No. 1, ¶ 1.) In their complaint, AudienceArc and Mann
9  allege four declaratory relief claims that are the mirror image of the claims in the Illinois
10 Complaint, *i.e.* (1) Declaratory Relief re Breach of Contract; (2) Declaratory Relief re Fraudulent
11 Transfers of Assets; (3) Declaratory Relief re Fraud on Creditors; and (4) Indebitus Assumpsit.
12 (*Id.*, Exh. A.) On December 22, 2015, the case herein was removed to this Court by PKI. (*Id.*)

13 **II.    LEGAL STANDARD**

14 PKI moves pursuant to 28 U.S.C. section 1404(a) to transfer this action to the Southern
15 District of Ohio based upon the forum selection clause contained in the June SOW. Section
16 1404(a) states:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it
> might have been brought or to any district or division to which all parties have
> consented.

Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 579 (2013). Forum selection clauses may be enforced through a motion to transfer under section 1404(a). *Id.*

"In the typical case not involving a forum selection clause, a district court considering a [section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and

3

otherwise promote 'the interest of justice.'" *Atlantic Marine*, 134 S.Ct. at 581 (quoting section 1404(a)). However, "the calculus changes . . . when the parties' contract contains a valid forum selection clause." *Id.* "[A] valid forum selection clause should be given controlling weight in all but the most exceptional cases," and the "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* (citation and brackets omitted). In these circumstances, "the plaintiff's choice of forum merits no weight" and the court "should not consider arguments about the parties' private interests." *Id.* The forum selection clause waives the parties' "right to challenge the preselected forum as inconvenient . . . [and the] district court may consider arguments about public-interest factors only." *Id.* at 582.

### III. DISCUSSION

PKI argues that the forum selection clause contained in the June SOW governs this action. The forum selection clause provides:

> Ohio law will apply to determine the validity and enforceability of this agreement and any and all such claims and demand relating or pertaining in any way to the services of PKI secured by this agreement; and any such claims and/or demand shall be determined exclusively by and limited to the venue and jurisdiction of State and Federal Courts in the Western Division of the Southern District of Ohio.

(June SOW at 6.) PKI further contends that because AudienceArc obtained the dismissal of the nearly identical Illinois Complaint by asserting that the June SOW's forum selection clause governed it, AudienceArc should now be "estop[ped]" from asserting that the forum selection clause does not apply to the present action.

The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position," particularly where the change of position prejudices the other party. *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *see also Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (prior statements need not be made under oath; "what matters is that [the party] pressed a claim in the earlier lawsuits that is inconsistent with the position she's taking in our case.") The doctrine's purpose is "to protect the integrity of the judicial process by

4

prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50 (internal citations and quotations omitted); *see also New Edge Network v. F.C.C.*, 461 F.3d 1105, 1114 (9th Cir. 2006) (internal quotation marks omitted) ("Courts apply the doctrine where a party's later inconsistent position presents a risk of inconsistent determinations."). A court considers several factors when deciding whether to apply the doctrine in a particular case. "First, a party's later position must be clearly inconsistent with its earlier positon." *New Hampshire*, 532 U.S. at 750 (internal quotations omitted). Second, the court considers "whether the party has succeeded in persuading a court to accept that party's earlier positon, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Id*. (internal quotations omitted). Third, the court considers "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

Here, the factors stated in *New Hampshire* favor a finding that AudienceArc is estopped from denying that the June SOW's forum selection clause applies to the complaint herein. AudienceArc's position here is inconsistent with the one it persuaded the Illinois court was correct. AudienceArc would derive an unfair advantage if it were to defeat PKI's original choice of forum by asserting that venue is only proper in Ohio, but then deny that the venue provision applied in order to maintain its own choice of forum in the mirror-image declaratory relief action.

Thus, the Court finds that under the doctrine of judicial estoppel,[2] AudienceArc is bound by its assertion of the forum selection clause in the Illinois action and is equitably barred from arguing that the forum selection clause does not apply to the present action. AudienceArc has

---

[2] PKI argued both that AudienceArc was "estop[ped]" from arguing against application of the forum selection clause, and that AudienceArc's position in the Illinois action was a judicial admission that the clause applied. The concepts of judicial admission and judicial estoppel closely related. However, judicial estoppel is not limited to inconsistent positions taken in the same litigation, but extends to situations where a court relied on or accepted a party's previous inconsistent position. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, No. 13-56091, __F.3d__, 2016 WL 1016779, at *4 (9th Cir. Mar. 15, 2016) (citing *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 605 (9th Cir. 1996), *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)).

failed to raise any exceptional circumstances or public interest factors that would preclude the enforcement of the forum selection clause.[3] *See Atlantic Marine*, 134 S. Ct. at 581 ("a valid forum selection clause should be given controlling weight in all but the most exceptional cases"); *see T & M Solar & Air Conditioning v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (burden on plaintiff to show exceptional circumstances).

Therefore, for the reasons stated above, PKI's motion to transfer is **GRANTED**.

### IV. REQUEST FOR SANCTIONS

In light of the foregoing, AudienceArc's request for sanctions against PKI under 28 U.S.C. section 1927 for pursuing a frivolous motion to transfer is **DENIED**. *Cf. Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010) (sanctions appropriate under section 1927 where attorney unreasonably and vexatiously multiplies the proceedings by knowingly and recklessly pursuing frivolous action, misrepresenting legal rulings, and litigating in bad faith for five years).

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** PKI's motion to transfer this action to the Southern District of Ohio. The Clerk of Court shall transfer the file in this action to the United States District Court for the Southern District of Ohio.

This Order terminates Docket Number 17.

**IT IS SO ORDERED.**

Dated: April 28, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[3] AudienceArc's argument that PKI waived its right to enforce the forum selection clause, based on inapposite, unpublished, out of circuit, pre-*Atlantic Marine* cases, fails to persuade the Court. *See In Re Rationis Enterprises, Inc.*, 1999 WL 6364 (S.D.N.Y. 1999) (relying reasonableness inquiry overruled by *Atlantic Marine*); *Pirolo Bros v. Angelo Maffei and Figli, SAS*, 1989 WL 20945 (S.D.N.Y. 1989) (finding a lack of evidence of waiver of a forum selection clause based upon on New York contract law).

6